```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
                                                                   :
              -v-                                                  :   22 Cr. 655 (JPC)
                                                                   :
DANIEL ABAYEV,                                                     :   OPINION AND ORDER
                                                                   :
                           Defendant.                              :
                                                                   :
-------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant Daniel Abayev, a federal inmate serving a forty-eight-month sentence for conspiring to commit computer intrusion, moves for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A). Citing his family circumstances including childcare demands because of his wife's health and the impact of his conviction on his family, he asks the Court to modify his sentence to one year of home confinement followed by a term of supervised release. For reasons that follow, the Court concludes that Abayev's family circumstances do not amount to extraordinary and compelling reasons under Section 3582(c)(1)(A)(i), and further that the relevant Section 3553(a) factors also counsel against his early release. Abayev's motion therefore is denied.

## I. Background

**A.   Offense Conduct[1]**

In 2019, American citizens Abayev and Peter Leyman, who resided in Queens County, New York, and Russian citizens Aleksandr Derebenetc and Kirill Shipulin, who resided in Russia,

---

[1] The following description of Abayev's offense conduct is based on information in the Presentence Investigation Report, Dkt. 47 ("PSR"), to which neither party objected at sentencing, Dkt. 60 ("Sentencing Tr.") at 2:7-14.

began discussing plans to hack and manipulate the electronic taxi dispatch system at John F. Kennedy International Airport ("JFK"). PSR ¶¶ 12, 14.[2] This system was designed to dispatch taxi drivers to terminals in the order they arrived at a holding lot, where drivers often waited for several hours to pick up a passenger. *Id.* ¶ 13. A former taxi driver himself, Abayev conceived of the idea to infiltrate this system for a profit. *Id.* ¶¶ 22, 97. In late 2019, Abayev sent a message to Derebenetc in Russian, suggesting, "I know that the Pentagon is being hacked. So, can't we hack the taxi industry?" *Id.* ¶ 14 (alterations adopted). Abayev and his co-conspirators subsequently acted on this concept by exploring how to access the dispatch system. *Id.* This entailed bribing an individual to insert a flash drive into computers connected to the system, stealing computer tablets linked to the system, and accessing the system via Wi-Fi. *Id.*

From approximately September 2019 through September 2021, Abayev and his co-conspirators in the hacking scheme successfully obtained unauthorized access to JFK's dispatch system. *Id.* ¶¶ 12, 15. Upon gaining access, they were able to alter the dispatch system by moving certain taxis to the front of the dispatch line. *Id.* ¶ 15. This allowed taxi drivers to avoid wait times by skipping ahead of other drivers who had arrived before them at the holding lot. *Id.* Abayev and his co-conspirators would advance a taxi driver to the front of the line upon receiving the driver's taxi medallion number and a $10 payment. *Id.* ¶¶ 15-17. Because taxi drivers learned of the scheme through word of mouth, the conspirators incentivized promotion of the scheme by waiving the $10 fee for drivers who recruited other participants. *Id.* ¶ 16.

Abayev and the other members coordinated the scheme through large group chat threads with participating taxi drivers. *Id.* ¶ 17. When access to the dispatch system was obtained, for

---

[2] The Court emphasizes that the charges against Derebenetc and Shipulin are pending and those defendants remain presumed innocent. To the extent their conduct is discussed herein, it is based on the offense description in Abayev's Presentence Investigation Report.

example, a member would notify the group chat by writing "Shop open"; when their access was interrupted, a member would message "Shop closed." *Id.* Abayev also sent several messages in these threads instructing drivers on how to avoid detection by law enforcement while participating in the scheme. *Id.*

These tactics resulted in large numbers of taxi drivers fraudulently skipping the taxi dispatch line at JFK. *Id.* ¶ 18. On December 3, 2019, Abayev sent Leyman a spreadsheet showing that the hacking scheme had generated 2,463 fraudulently expedited trips in one week. *Id.* Later that month, Abayev sent Derebenetc a voice note in Russian explaining, "On our end this is absolutely a record. Here we almost have 600. We netted at least 500. This has never happened before. . . . This is exactly the level that I want to have every day. . . . Now in the morning we are going to collect the dough." *Id.* (alterations in Presentence Investigation Report). Over the course of the scheme, Abayev and his co-conspirators enabled as many as 1,000 fraudulently expedited taxi trips per day. *Id.* This conduct was lucrative, as Abayev eventually transferred over $100,000 in criminal proceeds to Derebenetc and Shipulin in Russia under the descriptions "payment for software development" and "payment for services rendered" to avoid suspicion from his bank. *Id.* ¶ 19. The Port Authority of New York and New Jersey ("Port Authority") ultimately lost $3,456,169.50, a figure that reflects the costs of investigating and remediating the hack and eventually upgrading its dispatch system. *Id.* ¶¶ 28-29.

**B.     Procedural History**

On December 5, 2022, Abayev was indicted by a grand jury with two counts of conspiracy to commit computer intrusions, the first in violation of 18 U.S.C. § 371 and the second in violation of 18 U.S.C. § 1030(b). Dkt. 4 ("Indictment"). He was arrested on December 20, 2022. Dkt. 9 (minute entry, dated December 20, 2022, of Abayev's initial appearance); *see* Dkt. 67

("Opposition") at 4. On October 30, 2023, Abayev appeared before the Honorable Paul A. Crotty and pleaded guilty to Count One pursuant to a plea agreement. PSR ¶¶ 2, 5.

Judge Crotty imposed sentence on February 12, 2024. *See* Dkt. 60; Minute Entry, Feb. 12, 2024. Based on Abayev's offense level of 29, which included a four-level enhancement for his leadership role in the scheme, *see* U.S.S.G. § 3B1.1(a), and criminal history category of I, Abayev's applicable sentencing range under the United States Sentencing Guidelines, absent the statutory maximum, would have been 87 to 108 months' imprisonment. Sentencing Tr. at 2:15-24; PSR ¶ 38. The statutory maximum for Count One was sixty months' imprisonment, however. *See* 18 U.S.C. § 371. Accordingly, Judge Crotty adopted sixty months as the applicable Guidelines sentence pursuant to Guidelines Section 5G1.1(a). Sentencing Tr. at 2:15-24; PSR ¶ 105. Judge Crotty then imposed a sentence of forty-eight months' imprisonment, three years of supervised release, restitution in the amount of $3,456,169.50, forfeiture in the amount of $161,258.26, and a $100 special assessment. Sentencing Tr. at 15:8-12, 16:8-12; Dkt. 55 (judgment of conviction).

According to the Bureau of Prisons ("BOP"), Abayev is currently incarcerated at FCI Otisville and has a projected release date of March 4, 2027. *See* Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited June 23, 2025). Attached to Abayev's motion is a copy of the BOP's First Step Act Time Credit Assessment, as of November 3, 2024, which appears to reflect a conditional release date of August 31, 2026. Dkt. 65 ("Motion"), Exh. A; *see* Motion at 2 ("[Abayev's] conditional release date is August 31, 2026. . . . This projected release date does not include Mr. Abayev's expected release to a halfway house at least six months prior to the scheduled release date."). On February 13, 2025, Abayev filed an administrative request for early release with the BOP, which was denied on March 20, 2025. Motion at 3; Opposition at 4.

4

This case was reassigned to the undersigned on March 25, 2025. *See* Notice of Case Reassignment, Mar. 25, 2025. Abayev filed the instant motion on March 26, 2025, in which he moved under 18 U.S.C. § 3582(c)(1)(A) for a sentence modification of one year of home confinement and a period of supervised release. Dkt. 65. The Government filed its opposition on March 31, 2025. Dkt. 67.

## II. Legal Standard

Section 3582(c)(1)(A) "permits a defendant to move for a reduction in sentence, up to and including release from prison, in federal district court." *United States v. Jones*, 17 F.4th 371, 373-74 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)). The statute provides, in relevant part, that the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . (i) extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The party moving for a sentence reduction pursuant to Section 3582(c)(1)(A) "has the burden of showing that the circumstances warrant that decrease." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *accord United States v. Sellick*, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order). Thus, as the moving party, Abayev must show that: (1) he exhausted his administrative remedies;[3] (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a), on balance, do not cut against such reduction. *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

---

[3] Abayev asserts that he has exhausted the BOP's administrative remedies, Motion at 3, and the Government does not dispute exhaustion, *see* Opposition at 4.

5

### III. Discussion

**A.     Extraordinary and Compelling Reasons**

Congress did not define extraordinary and compelling reasons warranting a sentence reduction.  Rather, it directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under Section 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  The Sentencing Commission's policy statement in Guideline Section 1B1.13 provides that guidance.[4]  Under Section 1B1.13, the categories of circumstances considered "extraordinary and compelling" include the defendant's medical circumstances, age, and family circumstances, as well as whether the defendant is or has been a victim of abuse and whether the defendant received an unusually long sentence under certain circumstances with a change in the law.  U.S.S.G. § 1B1.13(b)(1)-(4), (6).  Section 1B1.13 also allows courts to consider any other circumstance or combination of circumstances that, either themselves or together with the reasons identified in subsections (b)(1) through (b)(4) (*i.e.*, medical circumstances, age, family circumstances, and victim of abuse), rise to the level of gravity of those four reasons.  *Id.* § 1B1.13(b)(5).  It further adds specific guidance on the permissible consideration of non-retroactive changes in the law, *id.* § 1B1.13(c), and provides that the defendant's rehabilitation may be considered as a factor in the "extraordinary and compelling" inquiry, although it cannot serve as the sole basis for reducing a sentence, *id.* § 1B1.13(d).  *See generally United States v. Mendez-Rojas*, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *2-4 (S.D.N.Y. Sept. 30, 2024) (outlining these background principles).

---

[4] As of November 1, 2023, Section 1B1.13 expressly applies to motions for compassionate release brought by defendants, as opposed to only motions by the BOP. *United States v. Rodriguez*, No. 22 Cr. 648 (JGK), 2025 WL 1002192, at *2 (S.D.N.Y. Mar. 31, 2025); *see* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." (emphasis added)).

6

Abayev's motion suggests three reasons why he has established extraordinary and compelling reasons to warrant a sentence reduction, each appearing to point to family circumstances under Section 1B1.13(b)(3): (1) his wife's mental state renders her "incapable of caring for" their four sons; (2) Abayev is the only available caregiver for his children; and (3) his family is facing hardship due to his incarceration. Motion at 4-5. These circumstances, whether considered individually or collectively, fall short of extraordinary and compelling reasons.

An extraordinary and compelling circumstance exists upon the "death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. § 1B1.13(b)(3)(A). To determine whether a caregiver is incapacitated, courts consider, among other things, the severity of the caregiver's medical issues, whether the caregiver is completely unable to care for herself or others, whether the caregiver is incapable of working, and whether the defendant has presented medical records showing the caregiver's incapacitation. *See, e.g.*, *Rodriguez*, 2025 WL 1002192, at *2 (finding that the defendant's wife's "medical conditions do not rise to the level of incapacitation" because the "defendant has failed to submit medical records demonstrating that his wife is incapacitated" and the defendant "reports that his wife is still working"); *United States v. Nunez*, No. 23 Cr. 517 (AT), 2024 WL 4504493, at *5 (S.D.N.Y. Oct. 16, 2024) (finding that a mother, who underwent an aggressive treatment regimen for locally advanced breast cancer, which rendered her "unable to work" and unable to "afford to pay other people to watch her children, or take them to school or appointments," was incapacitated); *United States v. Borland*, No. 18 Cr. 487 (KPF), 2024 WL 4026068, at *8, (S.D.N.Y. Sept. 3, 2024) (finding that a mother who was "diagnosed with several medical issues" and "debilitating knee pain" that impacted her "ability to walk and perform activities of daily living" was not incapacitated because she was not "completely unable to care for the couple's children").

Abayev asserts that his wife suffers from "Adjustment Disorder and Depression," a diagnosis that he claims has left her "incapable of properly caring for the four adolescent children." Motion at 4. He has not shown, or even represented, however, that his wife's condition rises to the level of incapacitation by rendering her "*completely unable* to care for the couple's children," *Borland*, 2024 WL 4026068, at *8 (emphasis added), or "*unable* to work," *Nunez*, 2024 WL 4504493, at *5 (emphasis added). In fact, Abayev's own evidence indicates the contrary. Abayev has provided a December 5, 2024 letter from his wife's psychotherapist outlining her diagnosis and symptoms. Motion, Exh. C. That letter describes Abayev's wife as a "full-time mother and a part time employee," *id.*, suggesting that she remains capable of caring for her children and maintaining employment. Abayev also has "failed to submit medical records demonstrating that his wife is incapacitated." *Rodriguez*, 2025 WL 1002192, at *2. Rather, the sole medical record Abayev provides—the psychotherapist's letter—only details his wife's "difficulties" and "struggles with daily life [and] raising children," but offers no indication that she is incapacitated. Motion, Exh. C. Abayev's claim that his wife is "incapable of giving proper care to her four children under her present psychological state," Motion at 4, thus is entirely unsubstantiated and, if anything, contracted by his own evidence.

For similar reasons, Abayev also fails to support his claim that he is the "only caregiver" for his four children. Motion at 4. When a defendant relies on a sole-caregiver argument, "courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688 at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks omitted); *cf. United States v. Lisi*, 440 F. Supp. 3d 246, 251-52 (S.D.N.Y. 2020) (finding extraordinary and

8

compelling circumstances because "the Court received evidence from several sources," including from "[the defendant], his mother, and numerous others," indicating that the defendant is "the only available caregiver for his mother"). Here, however, Abayev offers no evidence from *any* source indicating that he is the only available caregiver for his four children. *See generally* Motion. Instead, the only relevant source that Abayev provides—again, the letter from his wife's psychotherapist—suggests that his wife may still be an available caregiver, describing her as a present, "full-time mother," who balances "daily life, raising children, [and] working," although acknowledging that she worries "how long she can manage on her own." Motion, Exh. C. Abayev also asserts that the "part time employment by [his wife] goes to child care expenses," which implies that other individuals care for their children in addition to his wife. Motion at 5. *Contra Nunez*, 2024 WL 4504493, at *5 (finding family circumstances constituted extraordinary and compelling reasons when, among other things, a mother could "no longer afford to pay other people to watch her children" (internal quotation marks omitted)). As such, Abayev has not shown there to be a "dearth of other family members or individuals that could provide any needed services" to his children. *United States v. Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021).

Finally, Abayev cites the emotional and financial strain his incarceration has placed on his family. The letter from his wife's psychotherapist asserts that because of his incarceration, his wife "feels hopeless and stressed," Motion, Exh. C, while Abayev contends that his two youngest sons now suffer from "depression, anxiety, separation anxiety, and anger outburst," Motion at 4. Additionally, Abayev's family has "resigned to receiving public assistance from the Government for Food Stamps as Mr. Abayev provided the only financial support for the family." *Id.* at 5. While the Court sympathizes with these difficulties, "[h]ardship on the family almost always

9

results from serious criminal conduct" and does "not constitute an extraordinary and compelling reason" to reduce Abayev's sentence. *United States v. Webb*, No. 12 Cr. 111 (CS), 2023 WL 9022874, at *2 (S.D.N.Y. Dec. 29, 2023) (alterations adopted and internal quotation marks omitted).

In sum, Abayev presents no evidence establishing that his wife is incapacitated or that he is the only available caregiver for his children, and his family's hardships do not constitute extraordinary and compelling reasons. Abayev therefore fails to establish extraordinary and compelling reasons that warrant a sentence reduction.

**B.    Section 3553(a) Sentencing Considerations**

Even if Abayev could establish extraordinary and compelling reasons for compassionate release, the Court would still deny his motion because the applicable Section 3553(a) sentencing considerations weigh against granting relief. As mentioned, under 18 U.S.C. § 3582(c)(1)(A), the court may grant compassionate release "after considering the factors set forth in section 3553(a)." These include, among other identified factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the need "to afford adequate deterrence to criminal conduct," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Beginning with the nature and circumstances of the offense, Abayev engaged in serious criminal conduct. Over the span of two years, Abayev persistently hacked JFK's electronic taxi dispatch system through a technically sophisticated scheme involving individuals in the United States and Russia. PSR ¶ 12. At the scheme's zenith, Abayev enabled as many as 1,000 fraudulently expedited taxi rides per day. *Id.* ¶ 18. His actions had an actual and extensive impact

10

on victims. Not only did Abayev's conduct cost the Port Authority $3,456,169.50, *id.* ¶¶ 28-29, it also harmed large numbers of cab drivers at the airport, including drivers who lawfully and patiently waited their turn in the holding lot as other drivers cut them, and thus were delayed in being able to secure a fare, as well as those drivers who felt compelled to pay $10 per fare to avoid having to wait in the line as other drivers cut them. Further, Abayev played a leadership role in the offense—devising and orchestrating a scheme that involved participants in the United States and Russia, *see* PSR ¶¶ 12-19, 39; U.S.S.G. § 3B1.1(a)—which undermines his efforts to minimize his conduct and the danger he poses, *see* Motion at 5. *See, e.g.*, *United States v. Soto*, No. 13 Cr. 147 (KMW), 2023 WL 2386552, at *3 (S.D.N.Y. Mar. 7, 2023). The nature and circumstances of Abayev's offense thus counsel against a sentence reduction.

      The need for Abayev's sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment also weighs against Abayev's request for a sentence reduction. Judge Crotty sentenced Abayev to a below-Guidelines sentence of forty-eight months' imprisonment—below the advisory range of sixty months. Sentencing Tr. at 14:8-9. Abayev began serving his term of incarceration on April 5, 2024, approximately fourteen-and-a-half months ago. Motion, Exh. B. That means Abayev has completed only about thirty percent of his forty-eight month sentence—which itself already reflects a sizable downward variance from the applicable Guidelines sentence and whose custodial period may be substantially reduced based on the BOP's First Step Act Time Credit Assessment, Motion, Exh. A—despite Abayev having orchestrated a scheme that cost the Port Authority nearly $3.5 million and affected significant numbers of taxi drivers. Any reduction of Abayev's sentence, of which he has served only a fraction, would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); *see Rodriguez*, 2025 WL

1002192, at *3; *United States v. Spiegelman*, No. 20 Cr. 609 (JPC), 2022 WL 3644370, at *3 (S.D.N.Y. Aug. 24, 2022).

Turning to Abayev's history and characteristics, the need to protect the public from further crimes of Abayev, and the need for deterrence, Abayev emphasizes that he is a "first-time, non-violent offender who presents no danger if released." Motion at 5.  He also notes that he is almost fifty years old and points to the United States Sentencing Commission's observation "that recidivism rates decline as age increases." *Id.* at 6.  In addition, on November 27, 2024, the BOP conducted a recidivism risk assessment of Abayev, which assessed his risk of recidivism and his security level both to be minimum.  Motion, Exh. B; *see* Motion at 2.  Although the Court acknowledges Abayev's characteristics, his lack of a criminal history, and his low risk of recidivism, these considerations, which may favor compassionate release in other circumstances, *see, e.g.*, *United States v. Piggott*, No. 94 Cr. 417 (SHS), 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2022), do not support a sentence reduction for Abayev in light of the aforementioned Section 3553(a) factors that strongly weigh in favor of keeping his sentence intact.

For these reasons, releasing Abayev from custody and modifying his sentence to one year of home confinement followed by supervised release would fail to reflect the nature and seriousness of the offense, provide just punishment for that conduct, or promote respect for the law.  On balance, the Section 3353(a) factors counsel strongly against a reduction of the sentence Judge Crotty imposed.

## IV. Conclusion

Abayev's motion for compassionate release therefore is denied. The Clerk of Court is respectfully directed to close Docket Number 65.

SO ORDERED.

Dated: June 24, 2025
      New York, New York

                                                JOHN P. CRONAN
                                     United States District Judge